## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**J.U. and R.S.,**

     **Plaintiffs,**

**v.**

**THE GEO GROUP, Inc.;  CORIZON, Inc.;**
**WARDEN ERASMO BRAVO, in his individual and official capacity;**
**JOHN/JANE DOE (medical staff), in their individual and official capacities;**
**JOHN/JANE DOE (corrections officers), in their individual and official capacities;**
**and DR. MARK E. WALDEN,**

     **Defendants.**

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, DEFICIENT HIRING, CREDENTIALING, TRAINING, SUPERVISION AND RETENTION,  AND FOR DAMAGES

     Plaintiffs, through their counsel of record, bring this Complaint for violation of their civil rights under Amendments to the United States Constitution and 42 U.S.C § 1983, for negligent and constitutionally deficient hiring, training, supervision, credentialing and retention, and for negligence and medical malpractice, alleging as follows:

### JURISDICTION, VENUE AND PARTIES

     1.    Jurisdiction and venue are proper.

     2.    Plaintiffs understand that there are several dozen pending lawsuits and claims against these same Defendants by similarly situated claimants in State and Federal court.

3.     Upon information and belief, Defendant Mark Elliot Walden (hereinafter "Walden") was a resident of New Mexico and employed by Defendant Corizon to provide medical care at Guadalupe County Correctional Facility (hereinafter "GCCF") at all times relevant herein. Defendant Walden was acting within the course and scope of his employment at all relevant times.

4.     Counsel for Plaintiffs has been informed that Defendant Walden has a pending bankruptcy case, understands some claims herein could be 'stayed' and some not, and that in the other dozens of cases a 'lifting of stay' has occurred, or is being litigated, discussed or planned.

5.     Defendants were not covered by the New Mexico Medical Malpractice Act.

6.     Defendants John/Jane Does (medical staff at the prison) were residents of New Mexico at all times relevant herein.

7.     Defendants John/Jane Does (corrections officers) were residents of New Mexico at all times relevant herein.

8.     Upon information and belief, Defendants John/Jane Does medical staff and/or correction officers knew or had reason to know that Defendant Walden was sexually assaulting Plaintiffs, and not practicing proper hygiene as alleged with more specificity below.

9.     At all times relevant herein, The Geo Group, Inc. (hereinafter "GEO"), is a registered foreign corporation transacting business in New Mexico, and runs prison facilities in the District of New Mexico, including GCCF. GEO contracts with Corizon to attempt to delegate constitutional duties.

2

10.     Defendant Corizon, Inc. (hereinafter "Corizon") is a privately held foreign corporation transacting business in New Mexico, and was responsible for providing medical care to inmates at GCCF pursuant to a contract with the New Mexico Corrections Department. At all times pertinent hereto, Corizon was a licensed New Mexico healthcare facility in Guadalupe County, New Mexico.

11.     At all times pertinent hereto, Defendants GEO and Corizon acted through their owners, officers, directors, employees, agents or apparent agents, including but not limited to administrators, management, nurses, doctors, technicians, and other staff/personnel, and are responsible for their acts or omissions pursuant to the doctrines of *respondeat superior,* agency, or apparent agency.

12.     At all times pertinent hereto, Defendants GEO and Corizon had policies and practices that were deliberately indifferent to physical and sexual assault of prisoners/inmates, which proximately causes them harm.

13.     At all times material hereto, Defendants Corizon and GEO acted through their employees, medical staff, and nursing staff and are liable for their acts or omissions pursuant to the doctrine of *respondeat superior*, or for having aided and assisted Dr. Walden in the commission of the sexual abuse of Plaintiffs through the creation of the agency relationship which placed Dr. Walden in a position of authority, control and access to inmates, (*see* Restatement (Second) of Agency § 219(2)).

14.     Defendants Corizon and GEO are institutionally liable for the acts and omissions of Defendant Walden as a result of negligent credentialing, hiring, supervision, and retention, or because he was acting as an agent of Corizon and GEO.

3

15.     At all times pertinent hereto, Defendant Walden was acting as an agent of Defendants Corizon and GEO.

16.     Defendants Corizon and GEO are liable for their own negligent or constitutionally deficient policy-making; their failure to establish adequate guidelines for responding to, indentifying and preventing sexual assault; their failure to adequately train; and their failure to adequately staff their facility at GCCF.

17.     Defendant Erasmo Bravo (hereinafter "Bravo") was at all material times the Warden of the GCCF in Santa Rosa, New Mexico.

18.     Upon information and belief, Defendant Bravo was responsible for oversight of the GCCF, including providing proper management and oversight, and developing appropriate formal and informal policies, procedures and inmate safety protections at the facility.

19.     Upon information and belief, at all times pertinent to this complaint, Plaintiffs were inmates housed at GCCF in Santa Rosa, New Mexico.

20.     Upon information and belief, Plaintiffs are not properly informed or instructed on the Prison Litigation Reform Act (hereinafter "PLR") and grievance process. Even so, Plaintiff J.U. managed to file written grievance regarding Walden's sexual assaults disguised as medical care, which was accepted for consideration by Defendants and then referred for investigation.

21.     At all times pertinent to this complaint, Plaintiffs were in and under the complete, direct and continuous custody and control of Defendants.

22.      All of the acts complained of occurred in New Mexico.

## FACTUAL BACKGROUND REGARDING DEFENDANTS

4

23. The potential for sexual abuse and sexual misconduct directed toward inmates by prison personnel is a well-known problem to those operating prisons that creates a duty on the part of prison administrators to protect inmates from such misconduct.

24. The Constitutions of the United States and of New Mexico create duties to protect inmates from abusive personnel such as a perverted doctor.

25. Inmates represent a particularly vulnerable population when it comes to sexual abuse because of the disparity in power between inmates and personnel working in prisons.

26. As a result, inmates view reporting of abuse as futile because:

   a.  reporting abuse to staff is humiliating and subjects them to the risk of retaliation;

   b.  they fear (based on anecdotal experience) that complaints will not be kept confidential by staff, thereby subjecting them to risk of ridicule and harm by other inmates;

   c.  reporting would (or reasonably could) effectively sever their access to medical services;

   d.  as a result of their inmate status, complaints are often not taken seriously, they have few advocates, their welfare is a low priority, and they have limited ability to change their circumstances or to effectively prevent misconduct; and

   e.  their belief that a doctor's status in society would place the doctor's word above that of the individual inmate.

27.     In order to protect this vulnerable population, those who operate prisons are subject to stringent rules, regulations, and common sense standards of care regarding the prevention of sexual abuse in their facilities.

28.     Upon information and belief, at relevant times, Defendant GEO entered into for-profit contracts with governmental entities in the state of New Mexico to operate and manage prisons, thereby assuming the legal duties owed by the State.

29.     Upon information and belief, at relevant times, Corizon contracted with GEO and/or the New Mexico Corrections Department, to provide healthcare services in the GEO-New Mexico prisons.

30.     Acting under contract with the State of New Mexico to house inmates and provide health care services, Defendants GEO and Corizon operated GCCF at all times relevant to the instant Complaint.

31.     Dr. Walden was credentialed by and hired by Defendants GEO/Corizon to provide medical care to Plaintiffs during the time period that the conduct at issue occurred.

32.     Defendants had assumed a legal duty to lawfully, safely, and humanely operate healthcare services at correctional facilities in New Mexico, including GCCF.

33.     During a period of time beginning in 2010 and continuing thereafter, Plaintiffs were subjected to behavior of a sexual nature under the guise of medical care, during both routine and symptom-specific examinations by Defendant Walden.

34.     Defendant Walden's behavior included the following inappropriate and medically unnecessary acts: digital penetration and probing of the anal cavity, digital prostate massaging, groping and manual stimulation of the penis and testicles.

6

35.     Unbeknownst to either Plaintiff, other inmates were being subjected to the same abusive and perverted "medical" practices by Walden, apparently psychosexually motivated.

36.     Companies such as Defendants herein, that contract with the State of New Mexico to provide services to inmates for profits, including and especially medical care, must take appropriate steps to identify and prevent sexual abuse and protect patient welfare and Constitutional rights, to the same degree as their state-operated counterparts, regardless of costs and the effects on profits.

37.     For-profit companies such as Defendants contracting with the State of New Mexico to provide services to inmates must also ensure that they provide adequate training, supervision, and discipline regarding sexual abuse in their facilities, including their medical facilities.

38.     These duties include adequately training and supervising staff to be alert for and report suspicious activities between co-workers and inmates, learning to identify possible sexual abuse, developing systems so that staff and inmates are free from retaliation for reporting suspicious activities, and knowing how to properly investigate allegations of or perceived possible sexual abuse when grievances are reported either orally or in writing.

39.     These duties also include enacting and enforcing appropriate policies and customs regarding background checks, staff evaluations and staff discipline.

40.     When made aware of possible instances of sexual abuse and potential violations of inmate rights, companies such as GEO and Corizon cannot simply maintain the *status quo* at their facilities, but must act immediately to put a stop to such

misconduct. Otherwise, as happened here, over a period of a couple of years, dozens of inmates are victimized, each being told that rectal and prostrate exams are 'normal' and 'routine' for scrapes, allergies, sore shoulders, sprained ankles, or any conditions causing inmates to see the prison doctor.

41.     Prison operators and health care providers to prison populations, are required to ensure that whenever a medical professional is examining a patient, a second person be in the exam room to supervise, observe or note the contact between staff and inmate. Defendants utterly failed to meet this protocol.

42.     Upon information and belief, Defendants John/Jane Doe correction officers and medical staff knew, should have known, or kept themselves "willfully blind and deaf" to the fact that Defendant Walden was sexually abusing inmates while he was supposed to be providing medical care, because of reports and perceptions of inmates to staff members, including nurses, mental health practitioners, and correctional officers.

43.     Upon information and belief, Defendants Corizon and GEO knew, should have known, or kept themselves "willfully blind and deaf" to the fact that Defendant Walden was sexually abusing inmates while he was supposed to be providing medical care, because of written or oral reports and perceptions of inmates provided to staff members, including nurses, mental health practitioners and correctional officers.

44.     Despite this knowledge, Defendants negligently, recklessly, willfully or knowingly continued to grant Defendant Walden unsupervised access to victims by retaining Defendant Walden as an employee and allowing him to continue working during the relevant time period at GCCF and another facility in Clayton, New Mexico, (Northeast New Mexico Detention Facility, or "NENMDF").

45.     Upon information and belief, Defendants did not encourage reporting or documentation of these incidents, and enacted no discipline or retraining of Defendant Walden.

46.     Defendants Corizon and GEO allowed Defendant Walden's sexual abuse to continue by credentialing and retaining him to provide medical care at GCCF, thus continuing to give him access to potential victims, and aided-in-agency his sexual abuse of Plaintiffs.

47.     Defendants Corizon and GEO were made aware that Defendant Walden sexually abused his patients through the written grievance procedures as well as oral reports to nurses, mental health practitioners, and correctional officers, yet did not act to stop the abuse.

48.     In an effort to reduce exposure for their wrongdoing and failure to enact adequate inmate protections, upon information and belief, Defendants Corizon and GEO did not encourage reporting or documentation of these incidents, did not establish systems to protect the inmate population under their protection who, because of their vulnerability, might be afraid to report a doctor's misconduct, and enacted no discipline or retraining of Defendant Walden.

49.     Defendants Corizon and GEO allowed the sexual abuse of inmates under their care to continue until finally it was reported to the Clayton Police Department in July of 2012.

50.     Prison wardens have the ability to control the conduct of their staff and are responsible for ensuring that the facilities they operate are safe and free from abuse, including sexual abuse by prison personnel.

51.     Prison wardens are also responsible for ensuring that personnel hired and retained are properly trained and supervised, and do not pose a danger to inmates housed under their care.

52.     Prison wardens are responsible for ensuring that their facilities have and enforce adequate policies and disciplinary measures to keep the facility running safely.

53.     Upon information and belief, Defendant Bravo knew or should have known that Defendant Walden was abusing his patients at GCCF and the facility in Clayton, yet did not act to stop it by adopting or enforcing appropriate policies, training, discipline or investigation procedures.

54.     Instead, Defendant Bravo perpetuated lax inmate protections and a culture that allowed pervasive abuse to continue unabated for several years.

55.     Allowing prison doctors unsupervised access to patients with no third party present in a prison setting gives rise to the risk of sexual abuse such as occurred to Plaintiffs.

56.     Left in an unsupervised setting, doctors who wish to commit abuse can mask inappropriate sexual conduct by falsely presenting it to isolated and individual patients as necessary medical care.

57.     This is especially true for doctors in prisons, where patients are especially vulnerable because they have a great power disparity with prison personnel, they have no choice of doctor or alternatives, their complaints are not taken seriously or acted upon, they are subject to punishment, and the prison climate discourages reporting of abuse in the absence of significant and well known protections for those reporting such abuse or potential abuse.

10

58.     Defendant Walden is a medical doctor who was granted access to a vulnerable pool of victims at GCCF by the other Defendants.

59.     Upon information and belief, Defendants did not adequately screen or perform a background check on the personal and professional license of Defendant Walden.

60.     Under the guise of providing appropriate medical care, Defendant Walden abused his position at GCCF by using his position as a facility doctor to sexually abuse many inmates, including Plaintiffs.

61.     Further, in connection with performing inappropriate sexual acts on his patients under the guise of providing medical care, Defendant Walden did not employ proper hygiene and disease prevention standards. Specifically, Defendant Walden did not wear gloves prior to and during contact with Plaintiffs and other inmates, thereby endangering the health of all inmates he treated, as well as all other staff members working at these facilities, and anyone else with whom he came in contact.

62.     Upon information and belief, Defendants John/Jane Doe medical staff and/or correction officers knew or had reason to know that Defendant Walden was sexually assaulting Plaintiffs and not practicing proper hygiene.

63.     Defendants John/Jane Doe medical staff and/or correction officers were in close proximity to the inmates when they were receiving treatment by way of transporting inmates to see Defendant Walden, and transporting them back to their cell after being sexually assaulted by Defendant Walden.

64.     In many cases, Defendant Walden was not wearing gloves during his examination and Defendants John/Jane Doe medical staff and/or correction officers knew of this and failed to report this.

### FACTUAL BACKGROUND SPECIFIC TO EACH PLAINTIFF

65.     Defendants perpetrated and facilitated ongoing sexual abuse of inmates seeking medical treatment, for the instant plaintiffs, as follows:

66.     In about June, 2011, **Plaintiff J.U.** went to see Defendant Walden in connection with shoulder pain and acne; in September, 2011, in connection with ulceris colitis; in October, 2011, regarding elbow pain; in December, 2011, regarding steroid-dependent ulceris colitis; in February, 2012 for follow-up for the colitis and rashes.

67.     Defendant Walden stated he needed to do a rectal and prostrate examination at two of these visits, and digitally penetrated Plaintiff with his ungloved hand. The digital rectal exam was inappropriate in terms of methodology and duration of time. The exams involved gential fondling.

68.     Plaintiff was sexually assaulted by Defendant Walden in these visits, including "prostrate exams" involving penetration, each also involving genital fondling during the lengthy examinations.

69.     As Plaintiff began realizing the "medical care" was unrelated to his condition and was sexual in nature for Walden, Plaintiff chose to not further seek medical care, even though it was needed, choosing to suffer medical consequences instead.

70.     There was no nurse present during Plaintiff's examinations.

71.     Plaintiff subsequently reported the incidents to prison officials.

12

72.     Plaintiff has suffered and continues to suffer from nightmares, shame, and anxiety related to the sexual assaults, among other things.

73.     On or about October 7, 2010, **Plaintiff R.S.**, met with Defendant Walden to address asthma issues and albuterol and other prescriptions. Defendant Walden told Plaintiff he will need to perform a digital rectal exam. Plaintiff had never had a digital rectal exam and did not know what to expect. Dr. Walden called Plaintiff in, pulled down his pants, and stated as he was doing the exam, that it required prostrate massage, like when people treat allergies with acupuncture and massage. The exam and prostrate massage lasted over five minutes. A few months later, Dr. Walden called Plaintiff in again and insisted he needed to check the prostrate again, which happened again a few months after that. Some months later, Dr. Walden had Plaintiff bend over for another rectal and prostrate exam and "to check for a hernia", but also used his other hand to fondle Plaintiff's genitals and penis. Records show Plaintiff saw Dr. Walden October 7th, 8th and 28th, November 18th, December 1st, 10th, and 20th of 2010; January 5th, March 5th, April 8th, June 29th, July 23rd, and October 11th, 2011; and January 12th, 2012.   In early April, 2012, Dr. Walden again called Plaintiff in, but Plaintiff refused to go, and instead brought up the problem of Dr. Walden's "medical care" to a mental health professional.

74.     There was no nurse present during Plaintiff's examinations.

75.     Defendant Walden performed digital rectal exams and prostrate massages that were inappropriate in terms of length and methodology on both Plaintiffs.

76.     Plaintiffs were forced by necessity to return to Defendant Walden for follow up care for their medical needs, because of Defendants' customs, policies and procedures, and were unaccompanied by support staff.

77.     During the encounters Defendant Walden would touch Plaintiffs genitals and groin area without wearing gloves, even when performing digital rectal exams.

78.      Plaintiff subsequently reported the incidents to prison officials with grievance procedures.

79.     Among the several dozen other claimants who are litigating, many describe reporting the abuse to other Defendants, and all such claimants are potential witnesses in Plaintiffs' claims regarding the institutional liability claims.

80.     Plaintiffs refused further medical treatment from Defendant Walden despite their need for medical care because of Walden's conduct of utilizing unnecessary exams, without gloves, and without medical staff in the room.

81.     Based upon the duration and breadth of the sexual abuse occurring at Defendants' facilities at GCCF (Santa Rosa) and NENMDF (Clayton), Defendants knew, had reason to know, and/or kept themselves 'willfully blind and deaf' to the obvious risk they were creating and knowingly permitting to continue, which caused the harm to the instant Plaintiffs.

## COUNT I:
## SUBSTANTIVE DUE PROCESS/DANGER CREATION
## (VIOLATION OF BODILY INTEGRITY AND PERSONAL SECURITY)

82.     All previous paragraphs are incorporated herein.

83.     Defendants acted, pursuant to policy and custom, with reckless disregard for Plaintiffs' right "not to be subjected to serious dangers created by and under the control of the Defendants."

84.     Defendants had a non-delegable duty to ensure the safety of all persons under their direct care, control, and custody, including Plaintiffs.

14

85.     Defendants' reckless disregard of Defendant Walden's actions as well as Defendants' own actions and omissions caused Plaintiffs to be subjected to the serious danger of being sexually abused by a pervert doctor.

86.     The constitutional right to bodily integrity and personal security is part of the substantive due process right all United States citizens are afforded under the United States Constitution, whether an inmate or not.

87.     As a proximate result of the Defendants acts and omissions, Plaintiffs' were harmed in that they were unlawfully deprived of their constitutional right to bodily integrity and personal security.

88.     As a proximate result, Plaintiffs suffered damages which include, but are not limited to, physical injuries, pain and suffering, and psychological and emotional distress.

### COUNT II:
### 42 U.S.C. 1983 CUSTOM, PRACTICE, OR POLICY CAUSING VIOLATION OF CONSTITUTIONAL RIGHTS – DEFENDANTS GEO, CORIZON, WARDEN BRAVO

89.     All previous paragraphs are incorporated herein by reference.

90.     It is clearly established law in our Federal District that 42 U.S.C. § 1983 allows a plaintiff to allege and impose liability upon Defendant-Supervisors who create, promulgate, implement, or in some other way possess responsibility for the continued operation of policies, the enforcement of which "subjects, or causes to be subjected" plaintiffs to the "deprivation of any rights ... secured by the Constitution ....".

91.     Defendants' acts and omissions regarding Walden's misconduct were pursuant to policies and customs causing the violations of the Constitutional rights of Plaintiffs.

15

92.     Defendants promulgated, created, implemented or possessed responsibility for the continued operation of policies that caused the complained of constitutional harms, and acted with reckless disregard for the rights of Plaintiffs as secured by the Constitution.

93.     As a proximate result, Plaintiffs' suffered damages which include but are not limited to physical injuries, pain and suffering, and psychological and emotional distress.

## COUNT III:
## CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF EIGHTH AMENDMENT (WALDEN)

94.     All previous paragraphs are incorporated herein.

95.     By and through the actions described above, Defendant Walden and other Defendants violated the Eighth Amendment right of Plaintiffs to be free from cruel or unusual punishment. In particular, Defendant Walden violated Plaintiffs' rights to be afforded a reasonable degree of safety from serious bodily attack and to be secure in their bodily integrity.

96.     The actions of Defendant Walden in assaulting and battering Plaintiffs and violating their clearly established constitutional rights were effected in a manner that was objectively unreasonable, intentional, willful, wanton, and done in gross and reckless disregard of Plaintiffs' rights.

97.     Defendant Walden's unlawful sexual assaults, his violation of inmates' bodily integrity and right to personal security, proximately caused Plaintiffs to suffer damages and injuries.

98.     As a proximate result, Plaintiffs suffered damages which include but are not limited to physical injuries, pain and suffering, and psychological and emotional distress.

<b><u>COUNT IV:</u></b><br>
<b><u>CRUEL AND UNUSUAL PUNISHMENT</u></b><br>
<b><u>IN VIOLATION OF EIGHTH AMENDMENT</u></b><br>
<b><u>(GEO, CORIZON, AND JOHN/JANE DOE MEDICAL STAFF AND</u></b><br>
<b><u>CORRECTIONS OFFICERS)</u></b>

99.     All previous paragraphs are incorporated herein by reference.

100.     Defendants GEO, Corizon, and John/Jane Doe medical staff and corrections officers violated the Eighth Amendment rights of Plaintiffs to be free from cruel or unusual punishment. In particular, Defendants GEO, Corizon, and John/Jane Doe medical staff and corrections officers violated Plaintiffs' rights to be afforded a reasonable degree of safety from serious bodily attack and to be secure in their bodily integrity.

101.     These Defendants were deliberately indifferent to Plaintiffs' constitutional rights. Defendants GEO, Corizon, and John/Jane Doe medical staff and corrections officers had specific knowledge of facts and circumstances which would have caused a reasonable person to conclude that a substantial risk of serious harm existed.

102.     The manner in which Defendants GEO, Corizon, and John/Jane Doe medical staff and corrections officers violated Plaintiffs' clearly established constitutional rights was objectively unreasonable, intentional, willful and wanton, and done in gross and reckless disregard of Plaintiffs' rights.

103.     Defendants' deliberate indifference to a substantial risk of harm allowed Defendant Walden to conduct unlawful sexual assaults and deprive inmates of their

17

bodily integrity and violate their personal security. Thus, Defendants' deliberate indifference proximately caused Plaintiffs to suffer damages and injuries. These damages include physical injuries, pain and suffering, and psychological and emotional distress.

104.    Based upon the duration and breadth of the sexual abuse occurring at their facilities, Defendants knew, had reason to know, and/or kept themselves willfully 'blind and deaf' to the obvious risk they were creating and knowingly permitting to continue. Such deliberate indifference caused the harm to Plaintiffs.

**COUNT V:**
**NEGLIGENT HIRING, TRAINING, SUPERVISION AND**
**CREDENTIALING**

105.    All previous paragraphs are incorporated herein.

106.    Defendants Corizon and GEO breached the standard of care and acted in a negligent manner toward Plaintiffs, through one or more of the following acts or omissions:

i.      failing to hire well-qualified employees and medical personnel;

ii.     failing to provide or require adequate training of their personnel;

iii.    failing to provide adequate procedures and guidelines for identifying and preventing sexual assault;

i.      failing to properly train their agents and employees regarding the need for intervention when they suspect wrongdoing such as that which occurred in these cases;

ii.     failing to establish or to enforce policies and procedures for intervention when there are clear signs that inmates such as Plaintiffs are being sexually assaulted;

iii.    failing to have or to enforce policies requiring nurses to notify appropriate parties of sexual assault or misconduct;

18

iv.	failing to adequately investigate the qualifications, training and backgrounds of the doctors, nurses, and other employees used to staff the clinic; or

iv.	failing to adequately supervise, discipline or re-train doctors, nurses and other employees in the clinic.

107.	The employees, agents, and medical staff of Defendants Corizon and GEO, including the nurses, PA, and corrections officers failed to provide Plaintiffs adequate medical services and acted below the standard of care by committing the following acts and omissions:

> i.	failing to properly assess the clinical condition of Plaintiffs;
>
> ii.	failing to respond appropriately to or notify the appropriate persons that Plaintiffs were being subjected to unusual and unnecessary medical treatment;
>
> iii.	failing to timely intervene despite clear and convincing evidence that inmates, including Plaintiffs, were being sexually assaulted by Defendant Walden; or
>
> iv.	failing to properly manage and monitor the clinics so as to prevent injury to Plaintiffs.

108.	The acts and omissions of Defendants Corizon and GEO and their employees, agents, and medical staff were a direct and proximate cause of damages to Plaintiffs.

109.	As a direct and proximate result of the actions and omissions of Corizon and GEO and its agents, employees, and medical staff, Plaintiffs now suffer and will continue to suffer from physical and mental injuries.

## COUNT VI – MEDICAL NEGLIGENCE

110.    All previous paragraphs are incorporated herein.

111.    Defendant Walden held himself out as a trained general practitioner and was required to provide the medical care of such.

112.    Defendant Walden failed to provide Plaintiffs adequate medical services and acted below the standard of care for a doctor in New Mexico by committing the acts as described with particularity herein.

113.    The acts and omissions of Defendant Walden were a direct and proximate cause of Plaintiffs' injuries as described herein.

114.    As a direct and proximate result of the acts of Defendant Walden, Plaintiffs suffered damages which are incorporated herein by reference.

115.    Defendants Corizon and GEO, through their employees and agents, and Defendant Bravo, were required to use the ordinary care of a reasonably prudent entity in hiring, credentialing, training, supervising, and staffing, and in having policies and procedures in place to ensure that inmates at their facility were not needlessly endangered.

116.    Defendants Corizon and GEO through their employees and agents, and Defendant Bravo intentionally, willfully, recklessly, or negligently did not use the ordinary care of a reasonably prudent entity by committing acts and omissions including the following:

    a.    Choosing not to ensure that inmates had access to safe and appropriate medical care;

    b.    Choosing not to have or enforce adequate policies and procedures relating to medical care to prevent inmate abuse or predatory conduct;

20

c.      Choosing not to conduct adequate training of supervisors or staff to prevent abusive or predatory conduct by facility staff;

d.      Choosing not to adequately supervise to prevent abusive or predatory conduct by facility staff;

e.      Choosing not have or enforce safety policies related to hygiene and disease prevention, or conduct adequate training and supervision related to hygiene and disease prevention;

f.      Choosing not to investigate or inadequately investigating the background of prospective and current staff and management, including Defendant Walden;

g.      Choosing to hire and retain staff with a history of inappropriate, abusive or predatory conduct;

h.      Choosing not to train management and employees to properly investigate and address allegations of inappropriate conduct, abuse or predatory conduct;

i.      Choosing not to have or enforce adequate policies related to reporting, investigation and resolution of allegations of inappropriate conduct, abuse or predatory conduct.

j.      Choosing not to take adequate steps to safely operate or maintain the facility.

117.  Defendants Corizon and GEO are responsible for their own acts and omissions, as well as the acts and omissions of their employees and agents, pursuant to the doctrines of agency, and *respondeat superior*. Defendants aided-in-agency the perverted conduct of Dr. Walden.

118.  As a direct and proximate result of the intentional, willful, reckless or negligent acts and omissions of Defendants GEO, Corizon, Bravo, and their employees and agents, Plaintiffs suffered physical and emotional damages, including physical injury, physical pain and suffering, invasion of bodily integrity, denial of competent medical care and exposure to unsafe medical treatment, and psychological and emotional distress.

119.  Because the acts or omissions of these Defendants were willful, wanton or done in reckless disregard for Plaintiffs' safety and the safety of all individuals working or incarcerated at Defendants' facilities, these Defendants are subject to punitive damages as well as compensatory damages.

<u>**COUNT VII:**</u>
<u>**DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 BY**</u>
<u>**DEFENDANTS UNDER THE EIGHTH AND FOURTEENTH**</u>
<u>**AMENDMENTS**</u>

120.    All previous paragraphs are incorporated herein by reference.

121.    Defendants are state actors who, at all times pertinent hereto, were acting under color of state law.

122.    Defendants' policies and practices of inadequate training and supervision and of turning a 'blind eye' to ongoing sexual abuse disguised as medical treatment violated the constitutional rights of Plaintiffs to be free from cruel and unusual punishment.

123.    The number of inmates who were victimized both at the Guadalupe County Correctional Facility and at the Northeast New Mexico Detention Center over a period of years – as well as the awareness of this abuse by prison personnel including nurses, mental health officers, and correctional officers – shows a permanent and well-settled practice of choosing not to protect inmates from preventable sexual abuse.

124.    Defendants Corizon and GEO's policymakers were deliberately indifferent to conditions at the Guadalupe County Correctional Facility and the Northeast New Mexico Detention Center that permitted the sexual abuse of inmates, and the obvious consequence of depriving individuals like Plaintiffs of their civil rights.

125.    Defendants Corizon, GEO, and Bravo's deliberate indifference further deprived Plaintiffs of access to competent medical care while incarcerated.

126.    Defendants Corizon, GEO, and Bravo's deliberate indifference to the widespread practices at the Guadalupe County Correctional Facility and the Northeast New Mexico Detention Center that enabled the sexual abuse of inmates directly and proximately caused the constitutional deprivation resulting in Plaintiffs' damages, including physical injury, physical pain and suffering, invasion of bodily integrity, denial of competent medical care and exposure to unsafe medical treatment, and psychological and emotional distress.

127.    Defendants acted intentionally, maliciously, and with reckless indifference to Plaintiffs' Constitutional rights and their emotional and physical well-being when they permitted conditions that enabled the sexual abuse of inmates to occur in the medical units of the GCCF. An award of punitive damages is necessary to punish this conduct and prevent this sort of mistreatment to patients in the future.

## JURY TRIAL DEMAND

128.    Plaintiffs hereby demand a trial by jury.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs  request that they be awarded compensatory and punitive damages against all named Defendants in amounts to be proven at trial, costs, pre-judgment interest, post-judgment interest, attorney fees as per statute and the Court's discretion, and any and all other relief that this Court deems to be proper and appropriate.

*/s/ Brad D. Hall*
Law Offices of Brad D. Hall
320 Gold Ave SW #1218

Albuquerque, NM 87102
Phone: (505) 255-6300
Fax: (505) 255-6323
Email: brad@bhallfirm.com